HERMAN DREWS *et al. vs.* ANN RIVER LOGGING Co.

Argued April 18, 1893. Decided May 8, 1893.

**Verdict Supported by the Evidence.**

*Held,* in an action to recover damages for a breach of warranty in the sale of certain grain, that the verdict of the jury in plaintiffs' favor was supported by the evidence.

**Rulings Reviewed.**

Rulings of the trial court when receiving testimony, and when charging the jury, reviewed and disposed of.

Appeal by defendant, Ann River Logging Company, from an order of the District Court of Washington County, *W. C. Williston,* J., made August 26, 1892, denying its motion for a new trial.

The plaintiffs, Herman Drews and Albert Drews, copartners, in August, 1891, at Stillwater, bought of defendant, a corporation, about 3,300 bushels of rye raised by it, and then on its farm in Kanabec county, and which it was to deliver to plaintiffs on board the cars at Bronson, Minnesota. Defendant warranted the rye to be good and sound. Plaintiffs paid for it eighty cents per bushel, but it was found on arrival at Minneapolis to be wet and musty, and they brought this action to recover damages. They had a verdict May 17, 1892, for $409.42. Defendant moved for a new trial, but was denied, and it appealed.

*Clapp & Macartney,* for appellant.

*Searles & Gail,* for respondent.

COLLINS, J. Action to recover damages for a breach of warranty in the sale of a quantity of rye. The plaintiffs had a verdict, and the appeal is from an order denying defendant's motion for a new trial. It is claimed by counsel for appellant corporation that the verdict was not justified by the evidence; that the court erred in one of its rulings when receiving testimony in plaintiffs' behalf, and again erred when refusing to charge the jury as requested.

1. There was competent evidence produced upon the trial reasonably tending to sustain the verdict, and it cannot be disturbed. Such is our conclusion, after a careful examination of the testimony, as certified up from the trial court.

2. One of the plaintiffs was permitted to testify, over defendant's objection, as to what had been said to him by Davis, a bookkeeper in defendant's office. When this plaintiff learned that the rye was not as warranted, several days after it had been delivered by defendant and had been shipped to market, he called at the office to see defendant's manager, McKusick, from whom he purchased the same. McKusick was not in, whereupon plaintiff stated to Davis the damaged condition of the grain, and that, unless handled and removed from the cars at once, it would lose value. The latter replied, according to the witness, "I would do the best, the same as if it was your own." Without discussing the claim of respondents' counsel that, from the testimony, it clearly appeared that Davis had full authority to act for and bind defendant, we must say that this testimony was of no consequence, and could have had no bearing on the issues, which were—First, was the grain warranted by defendant? and, second, if so, did it comply with the warranty?

The defendant's liability as for breach of warranty was fixed long before this conversation, and we fail to see in what way the testimony received could have influenced the verdict.

3. The rye was raised upon a farm near the village of Bronson, and the trade was made at Stillwater, several miles distant. The rye was then on the farm, but, according to the pleadings and proof, was to be delivered to plaintiffs free on board cars at Bronson railway station. The substance of the instruction to the jury, requested by defendant's counsel and refused by the court, was that, if the grain was as represented when the trade was made

at Stillwater, the warranty was satisfied, notwithstanding it was to be delivered on board the cars at the station; and if it deteriorated in value before delivery, without fault on defendant's part, the loss would fall upon plaintiffs.

As before stated, the contract was to sell and deliver on board the cars at Bronson station, and the transaction at Stillwater amounted to nothing more than an executory agreement for sale and delivery. An agreement, no matter when or where made, to sell and deliver good, sound rye free on board cars at a railway station, is not performed in any of its parts until good, sound rye is delivered on the cars.

Order affirmed.

VANDERBURGH, J., did not sit.

(Opinion published 54 N. W. Rep. 1110.)